Michael TOMSON and Joann Tomson,
Plaintiffs-Appellants,

v.

AMERICAN FAMILY MUTUAL INSURANCE COMPANY,
Defendant-Respondent,

CAROLINA CASUALTY INSURANCE COMPANY, Schneider
National Bulk Carriers, Inc., Reginald Gaskins,
Humana Health Plan, Inc. and Midwest Security
Administrators, Defendants.

Court of Appeals

*No. 2008AP2744. Submitted on briefs August 4, 2009.
—Decided September 1, 2009.*

2009 WI App 150

(Also reported in 775 N.W.2d 541.)

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Daniel R. McCormick* and *Lea K. Polczinski* of *McCormick Law Office*, Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the briefs of *Wayne M. Yankala* and *Jenny Yuan* of *Mingo & Yankala, S.C.*, Milwaukee

A nonparty brief was filed by *William C. Gleisner, III* of *Law Offices of Wm. Gleisner*, Milwaukee and *Rhonda L. Lanford* of *Habush, Habush & Rottier, S.C.*, Madison for The Wisconsin Association for Justice.

Before Curley, P.J., Fine and Kessler, JJ.[1]

¶ 1. FINE, J. Michael and Joann Tomson appeal the circuit court's grant of motions for declaratory and summary judgment filed by their uninsured-motorist carrier, American Family Mutual Insurance Company, dismissing the Tomsons' claims against American Fam-

---

[1] We appreciate the *amicus curiae* brief submitted on behalf of The Wisconsin Association for Justice.

ily.[2] The circuit court determined that there was no coverage under the policy. We reverse.

## I.

¶ 2.  Michael Tomson was injured when the semi-trailer he was driving late at night northbound on Interstate 95 in Indiana hit a 400–pound dual-wheel assembly that had apparently come off of another semi-trailer some time before. The parties agree that Wisconsin law applies. According to the Tomsons' com-

[2] The Tomsons' notice of appeal is from the circuit court's order of August 5, 2008, and was filed in the circuit court on October 31, 2008. The circuit court's order on its face, however, envisioned entry of a subsequent document by directing: "That Judgment be entered consistent with this Order, dismissing all claims asserted against American Family Mutual Insurance Company in the above-referenced action, upon their respective merits, with prejudice, together with taxable costs against the plaintiffs, Michael and Joann Tomson." On October 9, 2008, the circuit court denied the Tomsons' motion for reconsideration. The circuit court's October 9 order similarly directed:   "That judgment be entered consistent with the Court's prior Order of August 5, 2008, dismissing all claims asserted against American Family Mutual Insurance Company in the above-referenced action, upon their respective merits, with prejudice, together with taxable costs against the plaintiffs, Michael Tomson and Joann Tomson." Judgment was entered on November 19, 2008. Neither of the circuit court's orders were final for purposes of this appeal. *See Wambolt v. West Bend Mut. Ins. Co.*, 2007 WI 35, ¶ 27, 299 Wis. 2d 723, 737, 728 N.W.2d 670, 678 (order contemplating entry of subsequent judgment not final for purposes of appeal). Nevertheless, we have jurisdiction over this appeal by virtue of WIS. STAT. § 808.04(8) ("If the record discloses that the judgment or order appealed from was entered after the notice of appeal or intent to appeal was filed, the notice shall be treated as filed after that entry and on the day of the entry.").

495

plaint, Reginald Gaskins was driving a semi-trailer southbound on Interstate 95 in Indiana when he "struck a dual[-]wheel assembly that was sitting in the roadway after being left there by an unidentified, uninsured motorist." The complaint alleged that after "Gaskins struck the wheel assembly, the uninsured wheels were propelled across the median lanes of travel into the northbound lanes" where Mr. Tomson hit the wheel assembly, resulting in the damages sought in this lawsuit. The circuit court's oral ruling assumed this scenario, with which American Family agreed. Further, a fair inference from the summary-judgment materials is that, as testified to by an Indiana State Police officer who arrived at the accident scene shortly after it happened, the wheel assembly he examined that night "looked like it had recently come off of a truck." Thus, this case involves a situation where a plaintiff driver seeks uninsured-motorist coverage because: (1) he is injured by a motor-vehicle part left on a highway (2) by an unknown motor vehicle when (3) that part is then hit by a known motor vehicle, and, as result, (4) that part strikes the plaintiff's motor vehicle.

¶ 3. As material here, the Tomsons' American Family policy, provided: "**We** will pay compensatory damages for **bodily injury** which an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle**." (Bolding in original.) The policy defined "**Uninsured motor vehicle**" as, *inter alia,* "A hit-and-run vehicle whose operator or owner is unknown and which causes **bodily injury** to **you** or a **relative**. Physical contact with a hit-and-run vehicle is required." (Bolding in original.)

¶ 4. As applicable here, Wis. Stat. § 632.32(4) (2007–08) provides:

Every policy of insurance subject to this section that insures with respect to any motor vehicle registered or principally garaged in this state against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance, or use of a motor vehicle shall contain therein or supplemental thereto the following provisions:

(a) *Uninsured motorist.* 1. For the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, in limits of at least $25,000 per person and $50,000 per accident.

2. In this paragraph "uninsured motor vehicle" also includes:

. . . .

b. An unidentified motor vehicle involved in a hit-and-run accident.[3]

---

[3] These provisions were changed by 2009 Wis. Act 28, §§ 3154 & 3155. Section 3154 created WIS. STAT. § 632.32(2)(f), which defines "Uninsured motorist coverage" to mean "coverage for the protection of persons insured under that coverage who are legally entitled to recover damages for bodily injury, death, sickness, or disease from owners or operators of uninsured motor vehicles." Section 3155 of the Act created § 632.32(2)(g), which defines "Uninsured motor vehicle" to include, *inter alia,* "2. Except as provided in subd. 3., an unidentified motor vehicle, provided that an independent 3rd party provides evidence in support of the unidentified motor vehicle's involvement in the accident. 3. An unidentified motor vehicle involved in a hit-and-run accident with the person." 2009 Wis. Act 28 was published June 29, 2009, and thus these provisions will become effective on November 1, 2009. 2009 Wis. Act 28, § 9426. They do not apply here. All references in this opinion to the statutes material to this appeal are to the pre-amendment versions.

¶ 5. American Family sought a declaratory judgment that its policy did not give the Tomsons uninsured-motorist coverage, and also summary judgment dismissing the Tomsons' claims against it. As noted, the circuit court agreed with American Family that there was no coverage. The circuit court interpreted WIS. STAT. § 632.32(4)(a)2.b to require that there be "a hit and followed by a run," and further opined that there was no coverage because "there's no evidence that the vehicle part was moving" before Gaskins hit it: "It didn't hit Gaskins on its own momentum." Thus, the circuit court concluded: "We do not have an unidentified motor vehicle that did the hitting and running."

## II.

¶ 6. A party is entitled to summary judgment if "there is no genuine issue as to any material fact" and that party "is entitled to a judgment as a matter of law." WIS. STAT. RULE 802.08(2). We review *de novo* a circuit court's ruling on summary judgment, and apply the governing standards "just as the trial court applied those standards." *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315–317, 401 N.W.2d 816, 820–821 (1987). A party that has the burden of proof at trial in connection with a claim has the burden to show that there are genuine issues of material fact that require a trial on that claim. *Transportation Ins. Co. v. Hunzinger Constr. Co.*, 179 Wis. 2d 281, 290, 507 N.W.2d 136, 139 (Ct. App. 1993). That burden can be met by reasonable inferences drawn from circumstantial evidence, *Belich v. Szymaszek*, 224 Wis. 2d 419, 424–425, 592 N.W.2d 254, 258 (Ct. App. 1999); *see also H&R Block Eastern Enterprises, Inc. v. Swenson*, 2008 WI App 3, ¶ 31, 307 Wis. 2d 390, 408, 745 N.W.2d 421, 430, and we examine the parties' submissions in a light most favorable to the

party against whom summary judgment is sought, *Johnson v. Rogers Mem'l Hosp., Inc.*, 2005 WI 114, ¶ 30, 283 Wis. 2d 384, 401, 700 N.W.2d 27, 35. Although whether to grant or deny a motion for declaratory judgment is within the circuit court's discretion, a decision based on an erroneous view of the law is an erroneous exercise of that discretion. *Theis v. Midwest Security Ins. Co.*, 2000 WI 15, ¶ 8, 232 Wis. 2d 749, 753–754, 606 N.W.2d 162, 164. Interpretation of Wis. Stat. § 632.32(4) presents an issue of law that is also subject to our *de novo* review. *See Theis*, 2000 WI 15, ¶ 9, 232 Wis. 2d at 754, 606 N.W.2d at 164.

¶ 7.   Although this appeal presents a fact pattern of first impression, our path is guided—indeed, controlled—by *Theis*, which set out the factors governing the interpretation and application of Wis. Stat. § 632.32(4)(a)2.b. As *Theis* points out, "[i]f the statute requires coverage, we need not examine the insurance policy." *Theis*, 2000 WI 15, ¶ 10, 232 Wis. 2d at 754, 606 N.W.2d at 165. Thus, we analyze whether § 632.32(4)(a)2.b requires coverage here.

¶ 8.   We start with the following unambiguous statement by *Theis*:

> We hold that Wis. Stat. § 632.32(4) requires that the uninsured motorist clauses of an insurance policy provide coverage when a detached piece of an unidentified motor vehicle is propelled into the insured's motor vehicle by an unidentified motor vehicle.

*Theis*, 2000 WI 15, ¶ 11, 232 Wis. 2d at 754, 606 N.W.2d at 165. The question we face is whether § 632.32(4) similarly requires coverage when a detached piece of an unidentified motor vehicle is propelled into the

insured's motor vehicle by an *identified* motor vehicle. As explained below, our answer is "yes."

¶ 9. The plaintiff in *Theis* was injured when the semi-trailer he was driving was hit by a leaf spring that had come off of another semi-trailer. *Theis*, 2000 WI 15, ¶¶ 4–5, 232 Wis. 2d at 752, 606 N.W.2d at 163–164. The leaf spring flew up after an unidentified semi-trailer had passed the plaintiff and "was roughly 30 feet in front" of the plaintiff's truck. *Id.*, 2000 WI 15, ¶ 4, 232 Wis. 2d at 752, 606 N.W.2d at 163–164. No one knew from where the leaf spring had come: "The object *either* came off the passing semi-tractor *or came off yet another unidentified motor vehicle and was propelled into the plaintiff's vehicle by the passing semi-tractor.*" *Id.*, 2000 WI 15, ¶ 5, 232 Wis. 2d at 752, 606 N.W.2d at 164 (emphasis added).

██

¶ 10. *Theis* noted that coverage under WIS. STAT. § 632.32(4)(a)2.b is required if three elements are met: First, there must be "an unidentified motor vehicle." *Theis*, 2000 WI 15, ¶ 14, 232 Wis. 2d at 756, 606 N.W.2d at 165. "Second, the statute requires than an unidentified motor vehicle hit" the plaintiff's motor vehicle. *Id.*, 2000 WI 15, ¶ 15, 232 Wis. 2d at 756, 606 N.W.2d at 165. "Third, the statute requires that the unidentified motor vehicle must have run from the scene." *Id.*, 2000 WI 15, ¶ 16, 232 Wis. 2d at 756, 606 N.W.2d at 165. *Theis* held that all the elements were satisfied in that case. First, the truck that propelled the leaf spring into the plaintiff was never identified and thus satisfied the unidentified-motor-vehicle requirement. *Id.*, 2000 WI 15, ¶ 14, 232 Wis. 2d at 756, 606 N.W.2d at 165. *Theis* also held that the third element was satisfied because "[t]he unidentified semi-tractor that propelled the leaf spring into the insured's motor vehicle in the present

case did leave the scene of the accident." *Id.*, 2000 WI 15, ¶ 16, 232 Wis. 2d at 756, 606 N.W.2d at 165. That left only one element that required further analysis: "whether a piece detached from an unidentified motor vehicle that is propelled into the insured's motor vehicle by an unidentified motor vehicle satisfies this requirement of a 'hit.' " *Id.*, 2000 WI 15, ¶ 15, 232 Wis. 2d at 756, 606 N.W.2d at 165.

¶ 11.   *Theis* began its analysis of the "hit" requirement by noting that by not defining "hit" or "hit-and-run accident" the "legislature apparently recognized that a vast variety of unpredictable scenarios can give rise to claims for uninsured motorist coverage." *Id.*, 2000 WI 15, ¶ 18, 232 Wis. 2d at 756–757, 606 N.W.2d at 166. Thus, according to the Legislative Council note quoted by *Theis*: "A precise definition of hit-and-run is not necessary for in the rare case where a question arises, the court can draw the line." *Id.*, 2000 WI 15, ¶ 18 n.3, 232 Wis. 2d at 757 n.3, 606 N.W.2d at 166 n.3.

¶ 12.   Turning to whether the "hit" requirement was satisfied, *Theis* held that the cases denying uninsured-motorist coverage because there was no contact with the plaintiff's vehicle were not on point because "although there was no physical contact between two intact motor vehicles [in *Theis*], *there was physical contact* between the insured's motor vehicle and a piece detached from the unidentified motor vehicle." *Id.*, 2000 WI 15, ¶ 21, 232 Wis. 2d at 758, 606 N.W.2d at 166 (emphasis added). Accordingly, the so-called miss-and-run cases where there was no coverage because there was no physical contact with an unidentified vehicle were inapposite, as was the no-coverage case where ice was thrown off an unidentified car. *Id.*, 2000 WI 15, ¶¶ 20–25, 232 Wis. 2d at 757–760, 606

N.W.2d at 166–167.[4] This is significant, because, as we have seen, *Theis* specifically noted that the leaf spring could have come from *either* the truck that propelled it into the plaintiff *or* from some other unidentified truck. *Id.*, 2000 WI 15, ¶ 5, 232 Wis. 2d at 752, 606 N.W.2d at 164.

¶ 13. Although *Theis* held that the elements to coverage were satisfied in that case, it recognized that "[n]either the language of the statute, the existing case law nor the legislative history mandates a decision in this case." *Id.*, 2000 WI 15, ¶ 27, 232 Wis. 2d at 760, 606 N.W.2d at 167. *Theis* therefore turned to what it called the "primary purpose" of the statute—"to compensate an injured person who is the victim of an uninsured motorist's negligence to the same extent as if the uninsured motorist were insured"—and held that this core consideration required coverage: "Had an identified insured driver negligently deposited this leaf spring on the road *or* negligently propelled the leaf spring into the plaintiff's vehicle, the plaintiff would have recovered from the negligent driver's insurance company." *Id.*, 2000 WI 15, ¶ 28, 232 Wis. 2d at 761, 606 N.W.2d at 167–168 (emphasis added). Further, *Theis* noted that

---

[4] The miss-and-run cases are: *Hayne v. Progressive Northern Ins. Co.*, 115 Wis. 2d 68, 339 N.W.2d 588 (1983); *Amidzich v. Charter Oak Fire Ins. Co.*, 44 Wis. 2d 45, 170 N.W.2d 813 (1969); and *Wegner v. Heritage Mut. Ins. Co.*, 173 Wis. 2d 118, 496 N.W.2d 140 (Ct. App. 1992). The ice-sloughing case is *Dehnel v. State Farm Mutual Automobile Insurance Co.*, 231 Wis. 2d 14, 604 N.W.2d 575 (Ct. App. 1999). *See also DeHart v. Wisconsin Mut. Ins. Co.*, 2007 WI 91, ¶¶ 2–3, 302 Wis. 2d 564, 568–569, 734 N.W.2d 394, 396 (no coverage under WIS. STAT. § 632.32(4)(a)2.b when plaintiff's car was forced off the road by an unidentified car, but did not "make physical contact" with either the unidentified car or any other car affected by the unidentified car).

requiring physical contact between an unidentified motor vehicle (as did the miss-and-run cases and the ice-slough-off case) prevents fraudulent claims alleging "phantom" motor vehicles. *Id.*, 2000 WI 15, ¶ 30, 232 Wis. 2d at 762, 606 N.W.2d at 168.[5]

■

¶ 14. We analyze this appeal against *Theis*'s teachings, turning first to whether the three requirements for mandatory coverage under WIS. STAT. § 632.32(4)(a)2.b are satisfied. The first element, as we have seen, is that there be an unidentified motor vehicle. Although *Theis* used the truck that passed the plaintiff in that case as the unidentified motor vehicle, *Theis*, 2000 WI 15, ¶ 14, 232 Wis. 2d at 756, 606 N.W.2d at 165, it could have just as easily chosen the truck that dropped the leaf spring, given that *Theis* framed the issue as whether there is "coverage when a detached piece of an unidentified motor vehicle is propelled into the insured's motor vehicle by an unidentified motor vehicle," *id.*, 2000 WI 15, ¶ 2, 232 Wis. 2d at 751, 606

---

[5] *Theis v. Midwest Security Insurance Co.*, 2000 WI 15, 232 Wis. 2d 749, 606 N.W.2d 162 also held that "[a] second purpose of the uninsured motorist statute is that the reasonable coverage expectations of an insured should be honored," and that a reasonable insured would expect to have coverage under the facts in that case. *Id.*, 2000 WI 15, ¶ 29, 232 Wis. 2d at 761–762, 606 N.W.2d at 168. *Smith v. General Casualty Insurance Co.*, 2000 WI 127, ¶ 27, 239 Wis. 2d 646, 659, 619 N.W.2d 882, 888, however, later held that "the reasonable expectation of the insured regarding the language of the policy is not relevant to our analysis of WIS. STAT. § 632.32(4)(a)2.b." When two supreme court decisions appear to be inconsistent, we apply the latest. *See Spacesaver Corp. v. Wisconsin Dep't of Revenue*, 140 Wis. 2d 498, 502, 410 N.W.2d 646, 648 (Ct. App. 1987). Accordingly, we do not discuss the reasonable-expectation-of-the-insured in connection with our analysis of § 632.32(4)(a)2.b.

N.W.2d at 163, and, as we have seen, recognized that the leaf spring could have come from either the passing truck or from another unidentified truck, *id.*, 2000 WI 15, ¶ 5, 232 Wis. 2d at 752, 606 N.W.2d at 164. Here, the truck that dropped the 400–pound dual-wheel assembly is not identified. The first element of mandatory coverage under § 632.32(4)(a)2.b is thus met.

¶ 15. As for the second requirement, whether there was a "hit," as in *Theis*, there was physical contact here by something that came from an unidentified truck. Accordingly, *Theis*'s holding is equally applicable here: "although there was no physical contact between two intact motor vehicles, there was physical contact between the insured's motor vehicle and a piece detached from the unidentified motor vehicle." *Id.*, 2000 WI 15, ¶ 21, 232 Wis. 2d at 758, 606 N.W.2d at 166. Again, the leaf spring could have come from either of the two unidentified trucks, *id.*, 2000 WI 15, ¶ 5, 232 Wis. 2d at 752, 606 N.W.2d at 164, and thus could have been at rest when it was struck by the second truck. Thus, the circuit court was wrong when it concluded that in order for there to be coverage the wheel assembly had to be moving when Gaskins struck it.

¶ 16. Significantly, and also contrary to the reading of the statute by the circuit court here, there need not be first a "hit" and then a "run"; under one of the two possible scenarios in *Theis*, the truck that left the leaf spring in the road "ran" before there was any hit (the propelling of the leaf spring into Theis's truck by the passing unidentified truck)—all that is required is that there be both a "hit" and a "run" (namely, a hit resulting from something done by the unidentified vehicle) in any sequence. This latter point is exemplified by *Smith v. General Casualty Insurance Co.*, 2000 WI 127, 239

Wis. 2d 646, 619 N.W.2d 882, where there was a chain reaction: an unidentified car hit an identified truck, which, as a result, hit the plaintiff's car. *Id.*, 2000 WI 127, ¶ 3, 239 Wis. 2d at 648–649, 619 N.W.2d at 883. Thus, the "run" in *Smith*—that is, the event that led to the first car being unidentified—happened either before or, at the very least, contemporaneously with the hit (the requisite physical contact between the identified truck and the plaintiff's car).

¶ 17. The third requirement for mandatory coverage is also present: as in *Theis*, where the truck that dropped the leaf spring was unidentified, the truck that dropped the wheel assembly in this case is also unidentified.[6] All three of the statute's technical requirements are thus met here. But there is more.

██

¶ 18. As *Theis* held, the focal point of decisions under the statute is the statute's "primary purpose" "to compensate an injured person who is the victim of an uninsured motorist's negligence to the same extent as if the uninsured motorist were insured." *Theis*, 2000 WI 15, ¶ 28, 232 Wis. 2d at 761, 606 N.W.2d at 167–168. Here, to paraphrase *Theis*, had an identified insured driver negligently deposited a wheel assembly on the

---

[6] We recognize that *Theis*, as noted in the main body of this opinion, used the passing truck and not the truck that may have left the leaf spring in the road before that leaf spring was hit by the passing truck as the unidentified vehicle, but, as we also explain in the main body of this opinion, there is nothing that suggests that the truck that may have lost the leaf spring would not have also qualified as the unidentified vehicle in order to satisfy the third requirement, especially because one of the *Theis* scenarios was that the leaf spring was at rest on the highway before it was hit by the passing truck. *Theis*, 2000 WI 15, ¶ 5, 232 Wis. 2d at 752, 606 N.W.2d at 164.

road, the plaintiff could have recovered from the negligent driver's insurance company. *See ibid.* Accordingly, because all of the requisite elements of WIS. STAT. § 632.32(4)(a)2.b are met here and had the truck that dropped the wheel assembly been identified, the Tomsons could have sued that truck's carrier, thus, § 632.32(4)(a)2.b requires uninsured-motorist coverage. Consistent with *Theis*, we do not therefore discuss whether the language of American Family's policy provides coverage. *Theis*, 2000 WI 15, ¶ 10, 232 Wis. 2d at 754, 606 N.W.2d at 165 ("If the statute requires coverage, we need not examine the insurance policy.").[7]

¶ 19.   Accordingly, we reverse the judgment, and remand for further proceedings.[8]

---

[7] American Family relies heavily on cases from other jurisdictions and *Milam v. State Farm Mutual Automobile Insurance Co.*, 972 F.2d 166 (7th Cir. 1992), which applied federal common law in holding that there would be no coverage under the uninsured-motorist policy issued by State Farm in an accident caused when a truck hit a tire in the road, swerved out of control, and then struck the insured's decedent unless the tire was actually "rolling upright" when the truck hit it. As we have seen, however, we are applying WIS. STAT. § 632.32(4)(a)2.b, as did *Theis*. As *Theis* recognized, "[c]ases from other jurisdictions differ in the application of uninsured motorist coverage to the fact situation presented in this case depending on their statutes and the particular insurance policy language involved, but our decision today is supported by existing case law" in Wisconsin. *Theis*, 2000 WI 15, ¶ 32, 232 Wis. 2d at 763, 606 N.W.2d at 168 (footnote omitted). Our decision is also governed by Wisconsin law, and decisions from other jurisdictions are no more helpful here than they were in *Theis*.

[8] Although American Family asserts that the Tomsons have not demonstrated how the truck that dropped the wheel assembly was negligent, that issue was not dealt with by the circuit

*By the Court.*—Judgment reversed.

court, and, as *Theis* teaches, that matter is better left for trial. *See Theis*, 2000 WI 15, ¶¶ 34–35, 232 Wis. 2d at 764, 606 N.W.2d at 169.